IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **OCEAN SEMICONDUCTOR LLC,** *Plaintiff* vs. **RENESAS ELECTRONICS CORP. and RENESAS ELECTRONICS AMERICA, INC.,** *Defendants* | 6:20-CV-1213-ADA |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendants Renesas Electronics Corporation ("REL") and Renesas Electronics America, Inc.'s ("REA") (collectively, "Defendants" or "Renesas") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California, or in the alternative, for intra-district transfer to the Austin Division. ECF No. 36. Plaintiff Ocean Semiconductor LLC ("Ocean") filed its Response (ECF No. 39), and Defendants filed their Reply (ECF No. 45). After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Defendants' Motion to Transfer to the Northern District of California. The Court reserves its decision on the alternative motion to transfer to the Austin Division for a later time.

### I. FACTUAL BACKGROUND

Plaintiff Ocean Semiconductor filed this lawsuit accusing Defendants REL and REA of infringing U.S. Patent Nos. 6,660,651 ("the '650 Patent"); 6,907,305 ("the '305 Patent"); 6,725,402 ("the '402 Patent"); 6,968,248 ("the '248 Patent"); 7,080,330 ("the '330 Patent"); 6,836,691 ("the '691 Patent"); and 8,676,538 ("the '538 Patent") (collectively, the "Patents-in-

1

Suit"). ECF No. 1. The Patents-in-Suit were originally assigned to Advanced Micro Devices, Inc. ("AMD"). ECF No. 36 at 2. They were then assigned to Fullbrite Capital Partners ("Fullbrite") before finally being assigned to Ocean on October 20, 2020. *Id.*

Ocean is a limited liability company organized under the laws of Delaware, with its registered agent for service of process residing in Delaware. ECF No. 1. Ocean is the assignee and owner of the Patents-in-Suit. *Id.*

REL is a Japanese corporation with its principal place of business in Tokyo. ECF No. 36 at 2. REL designs and manufactures semiconductor products at its facilities in Japan. *Id.* It also manufactures other semiconductor products by contracting with third-party manufacturers. *Id.* REA is a wholly owned subsidiary of REL. *Id.* REA is a California corporation with its principal place of business in Santa Clara County, California. *Id.* It is the sales and marketing arm of its Japanese parent corporation REL. *Id.*

There are several third parties with information relevant to this litigation. These third parties include Taiwan Semiconductor Manufacturing Company Ltd. ("TMSC"), Applied Materials ("AMAT"), ASML Holding N.V. ("ASML"), and PDF Solutions. *Id.* at 3. Ocean alleges that Defendants infringe either directly or by using certain products that use technology supplied by these third parties. *Id.* AMAT produces manufacturing and process technologies to build semiconductor and display products, one of which is the E3 System. *Id.* AMAT headquarters are in Santa Clara County, California, and it maintains offices around the world, including one in Austin. *Id.* PDF Solutions produces semiconductor manufacturing and testing software, one of which is the Exensio system. *Id.* at 4. PDF Solutions is also headquartered in Santa Clara County, California. *Id.* TSMC manufacturers semiconductor products and is headquartered in Taiwan. *Id.* ASML produces lithography systems that reduce the costs in the semiconductor manufacturing

2

process; one of its products is the TWINSCAN. *Id.* Its headquarters are in the Netherlands, but also maintains offices in California, Arizona, Oregon, and Connecticut. *Id.* The Defendants allege that Ocean's infringement case is based on Renesas products that use E3 System, the Exensio system, and the TWINSCAN products. *Id.* at 3.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235,

3

241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Neither party contests that venue is proper in the NDCA and that this case could have been brought there. REA has a regular and established place of business in the NDCA and has engaged in sales of its infringing products there. And REL is a foreign corporation and can accordingly be sued in

any judicial district. 28 U.S.C. § 1391(c) ("a defendant not resident in the United States may be sued in any judicial district"). This Court finds that venue would have been proper in the NDCA had it been originally filed there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A. The Private Interest Factors

#### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

Renesas argues that its marketing and sales documents are in the NDCA. ECF No. 36 at 7. It contends that its marketing activities are controlled by employees of its REA headquarters in Santa Clara. *Id.* at 8. Its Marketing and Communication and Demand Creation team is also headquartered in Santa Clara. *Id.* The Defendants also argue that third party suppliers AMAT, TSMC, ASML, and PDF Solutions have "relevant operations in Northern California." *Id.* AMAT and PDF Solutions, producers of certain systems of the infringing products, are headquartered in Santa Clara. *Id.* TSMC is a Taiwanese corporation, but has a U.S. subsidiary in San Jose, California. *Id.* Lastly, ASML is headquartered in the Netherlands, but maintains an office in San

Jose. *Id.* What Defendants omit is that both TSMC and ASML also have offices in Austin. ECF No. 39 Ex. 5. Defendants assert that all of these companies have highly relevant evidence. *Id.*

Ocean argues this factor is neutral at best. It contends that Defendants fail to identify specific documents that might be relevant. ECF No. 39 at 6. To the extent that there are relevant documents, Ocean argues that these documents are likely electronically stored and easily accessible from anywhere. *Id.* Ocean also notes that Renesas relies primarily on marketing and sales information being stored in the NDCA, ignoring all of the infringement evidence related to the design and manufacturing of the accused products. *Id.* at 7. Those documents relating to design, manufacturing, and importation reside with REL or with TSMC (with whom REL had a contract to manufacture its products). *Id.* at 7–8. Both REL and TSMC are foreign corporations. Lastly, Ocean argues that the location of evidence from the third-party suppliers is in Asia or Europe, and the fact that those companies have offices in California is irrelevant to the sources of proof for the infringing products in this lawsuit. *Id.* at 8. Ocean also notes that many of these third-party suppliers have offices in the WDTX. *Id.* at 8, Exs. 4–6.

More sources of proof likely reside in the NDCA than the WDTX. REA headquarters are in the NDCA at its Santa Clara County office. As the sales and marketing arm of the Defendants, documents relevant to acts of infringement are stored in their offices. Although Ocean is correct that Defendants did not identify specific documents in its Motion, the managers and executives who control marketing and sales documents are employed at the Santa Clara County headquarters. ECF No. 36 at 8 (identifying REA employees Vice President of Sales of Americas Kris Rausch and head of Marketing Communication and Demand Creation Krista Pavlakos). Thus, even if specific documents were not identified, the employees who control them are in the NDCA and will likely produce them for trial from the Santa Clara County office.

Although Ocean is correct that Defendants focus too narrowly on documents relating to sales and marketing without considering other acts of infringement like design and development, Ocean fails to show that any party documents reside in the WDTX. Renesas or Ocean documents relating to design and manufacturing of the accused products are certainly relevant, but none are in the WDTX. So even if those sales and marketing documents in the NDCA are "overwhelmed by the documentary evidence that is ***not*** located there," this Court cannot say that any of those documents are in the WDTX. ECF No. 39 at 8 (emphasis in original). And although it is true that many of the documents relevant in this suit will come from REL in Japan, that does not make either the WDTX or NDCA more convenient.

Documents from the third-party suppliers are also relevant. AMAT and PDF Solutions each maintain headquarters in Santa Clara County. Because they supplied certain systems in the infringing Renesas products, documents relevant to infringement will likely reside in those California headquarters. AMAT does, however, maintain a campus in Austin, which houses a manufacturing and warehouse facility. ECF No. 39, Ex. 6. But Ocean does not affirmatively argue that there are relevant documents at this facility. As for the foreign corporations, TSMC has offices in both San Jose and Austin, both of which are identified as design centers. ECF No. 39, Ex. 4. It is unclear which office would have more relevant documents, and the fact that company headquarters are in Taiwan means that neither the transferee nor transferor district have easier access to sources of proof. ASML, a Dutch corporation, has offices in San Jose and Austin. It is similarly unclear which office would have more relevant documents. To summarize, the documents from the third-party suppliers are in Tawain, the Netherlands, San Jose, and Austin. But because two of the suppliers are headquartered in San Jose, and because those companies with

7

offices in Austin also maintain offices in San Jose, it is likely that more documents reside in the NDCA than the WDTX.

For those reasons, this Court finds that the relative ease of access to sources of proof factor favors transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Defendants make two arguments on this factor. First, four named inventors reside in Northern California. ECF No. 36 at 9. Second, Defendants argue that third parties have substantial operations in Northern California. *Id.* Ocean rebuts by stating that eight named inventors reside in the WDTX, with one more inventor residing in Texas just outside of this district. ECF No. 39 at 10. Ocean notes that because the inventors are not party witnesses, they will likely need a subpoena to testify at trial. *Id.*

The parties identify 13 witnesses under this factor, and all of them are named inventors of the Patents-in-Suit. Because they are neither party witnesses nor identified as unwilling, they will

8

all presumed to be unwilling and are properly analyzed under this factor. *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). An overwhelming majority of the witnesses fall under the subpoena power of the WDTX. Nine witnesses could be subpoenaed in this Court, but only four could be subpoenaed in the NDCA. Thus, the locations of the inventors disfavors transfer.

Ordinarily, this Court would analyze the witnesses employed by the third-party suppliers under this factor. But this Court cannot fairly accord any weight to Defendants' bare assertions that "third parties have substantial operations in Northern California." ECF No. 36 at 13. Defendants have not identified any witnesses of these third parties, by name or by position, that it may call to testify at trial. Moreover, as Ocean notes in its Response, Renesas stated elsewhere in its brief that most of the technical employees of these third-party suppliers do not reside in California. ECF No. 39 at 10. TSMC is headquartered in Taiwan and ASML is headquartered in the Netherlands, meaning that witnesses from those companies—witnesses this Court is left to speculate about—would not be within the NDCA's subpoena power. It is true that AMAT, ASML, and TSMC all have offices in San Jose, but they also all have offices in Austin. Even if some of these theoretical third-party witnesses work in the San Jose offices, there are similarly an unspecified number of witnesses that work in the Austin offices who could be called to testify. Thus, even if this Court could give weight to these hypothetical witnesses, the balance of third-party supplier witnesses would likely be neutral given that there are offices in each district.

9

Because an overwhelming majority of the named third-party inventors reside in the WDTX, the Court finds this factor disfavors transfer.

### *iii. The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time is a more important metric than distance. *Id.* When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

Defendants identify two witnesses by name who they plan on calling to testify. Those witnesses are Krista Pavlakos, the head of marketing at REA for the accused products, and Kris Rausch, the head of sales at REA for the accused products, both of whom work in REA's Santa Clara County headquarters. ECF No. 36 at 10. Defendants argue that travel to Waco would be inconvenient when compared to the short drive to the NDCA courthouses. *Id.* at 11. Defendants

also state that although it has employees in Austin, none of those employees have "unique information regarding the accused products." *Id.* at 10.

Ocean contends that because REA is only the sales and marketing arm, most of Defendants' witnesses on infringement work at REL in Japan. ECF No. 39 at 11. Those REL Japanese employees will be able to testify about the technical aspects of the accused products, making those REA employees of lesser importance. *Id.* Ocean also argues that the presence of more inventors in the WDTX than in the NDCA makes this district more convenient. *Id.* The problem with this last argument is that a witness cannot be simultaneously willing and unwilling to testify. A willing witness does not need to be subpoenaed. Ocean therefore cannot have it both ways by arguing the inventors of the Patents-in-Suit living in Texas under both the "convenience of willing witnesses" factor and the "compulsory process" for unwilling witnesses factor. This Court no longer requires the parties to identify which witnesses are unwilling to testify, but this Court will not allow parties to argue witnesses under one factor that analyzes willing witnesses and another that analyzes unwilling witnesses. Because the Texas-based inventors have not been identified as willing, this Court will treat them as unwilling witnesses and analyze them under the compulsory process factor as it did above. *See In re Dish Network L.L.C.,* 2021 WL 4911981, at *3.

Because the inventors cannot be properly considered under this factor, there are no witnesses that that live in the WDTX. Two witnesses, the heads of sales and marketing at REA, reside in the NDCA. Although Ocean is correct that the bulk of relevant fact witnesses may work at REL's headquarters and live in Japan, that still does not make either judicial district more convenient than the other. And neither Ocean nor the Defendants argue that the NDCA would be more convenient than the WDTX for the REL employees. The Federal Circuit has indicated that when the witness must travel a significant distance no matter where they testify, the difference

between traveling to California and Texas is slight at best. *In re Genetech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the circuit stated "the '100-mile' rule should not be rigidly applied" and that "witnesses from Europe [would] be required to travel a significant distance no matter where they testify" when comparing travel to the NDCA and Eastern District of Texas). *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). But because neither party has argued which district would be more convenient, nor have they identified any REL employees by name or position who would testify, this Court will not speculate about the impact of those witnesses on this factor.

Because at least two willing witnesses reside in the NDCA, and none reside in the WDTX, the Court finds this factor favors transfer.

### *iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

The Defendants assert that there are no practical problems associated with a transfer and there is no judicial economy to be gained because the case is in its early stages. ECF No. 36 at 11. Ocean responds by arguing that the presence of seven associated cases co-pending in this Court

raises substantial practical problems. ECF No. 39 at 4. Ocean also argues that the briefing on two important issues on the applicability of 35 U.S.C. § 271(g) and on ineligible subject matter under 35 U.S.C. § 101 create practical issues that weigh against transfer. *Id.* at 5. On that point, the Defendants rebut by stating those issues could just as easily be re-filed in the NDCA post-transfer. ECF No. 45 at 4.

The existence of seven co-pending cases raises substantial practical problems to transferring this case. Ocean has filed six other cases against various defendants, and in each case Ocean also asserted the same seven patents as it did in this one. *Ocean Semiconductor LLC v. Western Digital Techs., Inc.*, No. 6:20-cv-1216-ADA (W.D. Tex. Mar. 12, 2021); *Ocean Semiconductor LLC v. NVIDIA Corp.*, No. 6:20-cv-1211-ADA (W.D. Tex. Mar. 12, 2021); *Ocean Semiconductor LLC v. NXP Semiconductors N.V.*, No. 6:20-cv-1212-ADA (W.D. Tex. Mar. 12, 2021); *Ocean Semiconductor LLC v. Silicon Labs Inc.*, No. 6:20-cv-1214-ADA (W.D. Tex. Mar. 11, 2021); *Ocean Semiconductor LLC v. STMicroelectronics Inc.*, No. 6:20-cv-1215-ADA (W.D. Tex. Mar. 12, 2021); and *Ocean Semiconductor LLC v. MediaTek Inc.*, No. 6:20-cv-1210-ADA (W.D. Tex. Apr. 26, 2021). All seven of those cases are proceeding on the same schedules and have the same Markman hearing. Although it is true that this factor alone is not dispositive, this Court has previously held that when there are parallel actions involving the same patents, this factor weighs heavily against transfer. *See NCS Multistage v. Nine Energy Serv.*, C.A. No. 6:20-00277-ADA, 2021 U.S. Dist. LEXIS 60219, at *8 (W.D. Tex. Mar. 30, 2021). Transfer of this case to California, while the other six cases involving the same patents proceed here, would create significant practical difficulties. Not only would two courts be ruling on the same patents asserted by the same plaintiff, thus wasting judicial resources, but there would also be the risk of

inconsistent rulings on the Patents-in-Suit. Significant judicial economy would be gained by trying all seven cases in the same court.

For those reasons, the Court finds that this factor weighs heavily against transfer.

## B. The Public Interest Factors

### *i. Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Defendants argue that this factor is neutral because the time to trial in this district is roughly the same as in the NDCA. ECF No. 36 at 12. It also notes that this factor should be entitled to lesser weight because the Federal Circuit has indicated it is the most speculative factor. *Id.*

As Ocean points out, the problem with Defendants' time-to-trial argument is that it cites outdated statistics that are seriously misleading. More recent data from the past few years indicated that this Court has been able to bring patent cases to trial in approximately two years after the filing of the complaint. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC*, 2020 WL 6439178 (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com*

14

*Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google*, 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial). Recent Federal Circuit decisions have stated that time-to-trial is equal in these too forums, but those opinions plainly do not cite any statistics. See *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021); (citing no statistics); *In re Juniper*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (citing no statistics). Here, the parties have cited statistics. Although Defendants' statistics were misleading, Ocean's statistics paint a more accurate picture of time-to-trial in this Court. In its Response, Ocean cites statistics from the past five years, which show that the median time to trial in the NDCA is 4.88 years, while the median time to trial in the WDTX is 1.93 years. ECF No. 39, Ex. 2.

As both Ocean and Defendants note, the speed in getting to trial specifically is determinative under this factor. Notably, however, the trial backlog in NDCA caused by courthouse closures due to the COVID-19 pandemic beginning in March 2020 could make the time to trial in the NDCA longer than anticipated. By contrast, this Court conducted its first patent jury trial during the COVID-19 pandemic in October 2020 and has since conducted at least nine patent jury trials. By the time of the writing of this order, this Court will have conducted 11 jury trials in 2021 alone.

The substantial disparity in the updated time-to-trial statistics submitted by Ocean show that this factor disfavors transfer. There is clearly an appreciable difference—a difference of

almost three years—in in the degree of docket congestion, insofar as it relates to time-to-trial. That is bolstered by this Court's proven track record in expeditiously resolving patent cases specifically. Rapid disposition of this case is important given the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn*, 889 F.2d at 1080. The Federal Circuit has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).

Defendants assert that court congestion is the "the most speculative" factor which should be given lesser weight. ECF No. 36 at 12. But the Federal Circuit has only instructed that this factor should not by itself be dispositive in keeping a case in the transferor forum; it has not held that this factor should receive lesser weight. *In re Genentech, Inc.*, 566 F.3d at 1347 (merely noting that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors."); *In re Juniper*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (quoting *In re Genentech*); *In re Google, LLC*, No. 2021-170, slip op. at 14 (Fed. Cir. Sept. 27, 2021) (quoting *In re Genentech*). Those concerns are not present in this case, where other factors also favor keeping this case in the transferor forum.

For those reasons, the Court finds this factor disfavors transfer.

### *ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL

13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

Defendants argue that the presence of the third-party suppliers of the accused technologies in Northern California gives the NDCA a stronger local interest. ECF No. 36 at 12. Defendants also note that Ocean lacks any ties to this district to give it a local interest. *Id.*

The problem with Defendants' arguments on this factor is that they fail to tether the office spaces in the NDCA to the events forming the basis of infringement. They merely assert that those offices give them a local interest. The Federal Circuit has held that a generalized presence of office space is insufficient to give a district a local interest. *In re Apple Inc.*, 979 F.3d at 1345. Third parties TSMC and ASML both have their headquarters abroad, and Defendants have failed to show how their offices or its employees in Northern California have engaged in any conduct relevant to infringement.

Still, the NDCA likely has a localized interest in this case. AMAT and PDF Solutions have their headquarters in Santa Clara County, so presumably some of the events giving rise to infringement occurred there, such as design and development of the systems in the infringing product. Relatedly, REA is headquartered in the NDCA, a point that Defendants curiously do not argue in their brief on this factor. Because REA is the sales and marketing arm, its office headquarters would infringe on the Patents-in-Suit by selling the accused product. Therefore, the NDCA has a local interest stemming from the presence of REA, AMAT, and PDF Solutions.

Ocean argues that there are two sources that give the WDTX a localized interest. First, six of the seven Patents-in-Suit were invented by AMD (the original assignee of the Patents-in-Suit), a company with a substantial presence in this district. ECF No. 39 at 13. Eight of the inventors on those patents reside in the WDTX, which Ocean argues also gives this district a strong local interest. *Id.* The second source of local interest is from REA's presence in this district with at least 19 employees who reside here. *Id.*

The WDTX also has a localized interest in this case. Nearly all of the Patents-in-Suit were invented in this district, and those inventors continue to reside in the WDTX. The company that employed those inventors still maintains an office in this district. This infringement case will call into question the work and reputation of those individuals and that company who patented the ideas at issue. *See, e.g., In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("the Eastern District of North Carolina's local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). That gives this district an interest in adjudicating those rights. Similarly, REA's office and its 19 employees, who could have their work and reputation at issue in this litigation, also give this district a local interest. Ocean

indicated that the REA office in Austin is focused on research and development, which could certainly be relevant to the design and development of the accused product. ECF No. 39 at 8. Lastly, both parties also fail to note that three of the third-party suppliers also have offices in Austin. As noted above, AMAT has a manufacturing facility in Austin, and TSMC has a design facility in Austin. ECF No. 39, Exs. 5, 7. Manufacturing and design are undoubtedly relevant to infringement. PDF Solutions also maintains an office in this district, but it is unclear if that office has engaged in conduct relevant to this litigation to contribute to the localized interest.

In sum, both districts likely have a local interest. But the parties have failed to establish that one district's interest is stronger than the other. For the foregoing reasons, the Court finds this factor to be neutral.

### *iii. Familiarity of the Forum with the Law That will Govern the Case*

Both parties agree that this factor is neutral.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Disfavors transfer |
| Cost of attendance for willing witnesses | Favors transfer |

| | |
|---|---|
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Strongly disfavors transfer |
| Administrative difficulties flowing from court congestion | Disfavors transfer |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three of the eight factors are neutral. Two factors favor transfer, and three factors disfavor transfer. The sources of proof and convenience of witness factors point toward transferring the case to the NDCA. But those alone are insufficient. The WDTX is in a better position to secure the attendance of more witnesses via compulsory process. The presence of six co-pending cases involving the same patents would make trial of this case easier, cheaper, and quicker in the WDTX than in the NDCA. Accordingly, Defendants have failed to meet their burden in showing that transfer to the NDCA is clearly more convenient.

**IT IS ORDERED** that Defendants' Motion to Transfer Venue to the Northern District of California is **DENIED.** The Court reserves its decision on the alternative motion to transfer to the Austin Division for a later time.

SIGNED this 3rd day of December, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE